IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-00215-WDM-MJW

OLOYEA D. WALLIN,

Plaintiff,

v.

MR HOYT BRILL, et al.,

Defendants.

**RECOMMENDATION ON PLAINTIFF'S MOTION FOR A TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION (Docket No. 56)**

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this court pursuant to an Order of Reference to Magistrate Judge issued by District Judge Walker D. Miller on October 21, 2004. (Docket No. 20).

Before the court is the pro se incarcerated plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, which was filed on August 8, 2005. (Docket No. 56). The court has carefully considered the motion and the responses thereto (Docket Nos. 64 and 69). In addition, an evidentiary hearing was held before this court on September 15, 2005, at which testimony was received via video-conference from the plaintiff and defense witness Dr. Patty Beecroft, a physician who specializes in Family Medicine at the Arkansas Valley Correctional Facility ("AVCF"). Plaintiff's prison medical records were received into evidence as defendants' Exhibit B.

2

The court now being fully informed makes the following findings, conclusions, and recommendation that the plaintiff's motion be denied.

In his Amended Prisoner Complaint filed on April 1, 2004 (Docket No. 8), the plaintiff alleges an Eighth Amendment violation while he was incarcerated in Kit Carson Correctional Center ("KCCC") because he purportedly was not provided with appropriate treatment for an ankle injury that he sustained on January 11, 2002, and for an injury to the big toe on his left foot beginning in February 2002. Plaintiff now seeks a TRO and a PI "to ensure that [he] receive[s] necessary medical treatment and care and to remain free from retaliation and harassment." (Docket No. 58, ¶ 1). He asserts the following in his Declaration in Support of his motion:

> . . .
>
> 2. As set forth in the complaint in this case, Plaintiff was diagnosed with torn ligaments in his left ankle and severely injured left big toe by the medical staff at . . . (KCCC).
>
> 3. Plaintiff is suffering severe pain and physical discomfort and emotional pain by the injuries of the left ankle and foot. Also Plaintiff is suffering pain and new problems in his right leg, foot and his left leg and back to those injuries. Plaintiffs [sic] problems get so worse at times that it affects his daily activites [sic] and makes it extremely difficult to walk without pain and discomfort. Plaintiff faces immenent [sic] danger of more medical problems to his back, right leg, right foot, and left leg as well as, continuing more damage to the left ankle and left big toe all in which can and will cause deformities and determiation [sic] of joints, muscles, tendons and liagaments [sic].
>
> 4. Plaintiff has made request to see a specialist and to have the necessary treatment provided to him to include surgery to fix the problems in his left ankle and left foot big toe.
>
> . . .

3

(Docket No. 58, ¶¶ 2-4). In his Memorandum of Law in support of his motion (Docket No. 57), plaintiff states following "STATEMENT OF FACTS:"

> As stated in the declaration submitted with this motion, the plaintiff suffered an injury to his left ankle and left foot big toe. The plaintiff has been submitting medical requests for these injuries since January 2002. The plaintiff was finally allowed to see the facility doctor at . . . (KCCC) who diagnosed the left ankle as having torn liagaments [sic] and the left foot big toe as being injured and in a deformed manner. The defendants have not provided plaintiff with proper medical treatment for the injuries, which would have been surgery for the ankle and toe, and have not provided him with physical therapy or with any professional specialized orthopedic treatment. The plaintiff is experiencing continued pain, stiffness and limited motion in his ankle and toe all which affects his ability to properly walk and causes disruption in his activities daily.

(Docket No. 57 at 1-2).

In his Memorandum of Law in support of his motion, the plaintiff states that "[t]he defendants against whom relief is sought are, respectively the named defendants in this action and more importantly CDOC and Executive Director Joe Ortiz who is responsible for adequate medical care in the prison system." (Docket No. 57 at 2). When asked by the court during the hearing, however, plaintiff admitted that defendants Brill, Neuenschwander (incorrectly listed in the caption as "Mr. Rand"), and Bair are located at KCCC. Plaintiff is currently housed in AVCF. Therefore, as asserted by these three defendants in their Response to the plaintiff's motion (Docket No. 64), plaintiff's claims for injunctive relief against them are moot because they cannot provide the plaintiff with the relief he requests because he no longer resides at KCCC.[1]  See Green v. Branson, 108 F.3d 1296, 1299-1300 (10th Cir. 1997).

---

[1] It was for precisely this reason that counsel for these three defendants was not required to appear for the evidentiary hearing on the plaintiff's motion.

4

The court has reviewed the plaintiff's medical records which show that he has had medical visits for his ankle and toe, as well as other ailments. Plaintiff obviously is well aware of the procedures to obtain medical care in the various correctional facilities and has not infrequently availed himself of those procedures.

Plaintiff admittedly had his ankle and foot examined, follow-ups were done, and he had x-rays and an MRI. For example, according to his medical records, plaintiff went to the medical department on May 28, 2004, regarding his ankle and other complaints. Three days later, on June 1, 2004, he once again complained about his left ankle hurting. X-rays were thus taken of that ankle, the findings of which were merely "[t]here is some mild spurring around the ankle joint." The impression was "DJD [degenerative joint disease]." On June 7, 2004, an x-ray was taken of his left foot, and the findings were "[t]he patient has had previous bunionectomy. There is mild hallux valgus.[2] The foot is otherwise unremarkable." The impression was "[r]emote surgery."

The following month, on July 15, 2004, plaintiff was seen by a speciailist, orthopedist Dr. Gary Go, who reported in a Request for Consultation form as follows:

> S.   Patient is neurovascularly intact. There is a well healed surgical
> scar from a previous _____ surgery. There is no pain in ROM of the
> great toe. There is a soft movable mass on the antero-lateral aspect of
> the left ankle essentially just anterior to the lateral malleolus. X-ray of the
> left foot/ankle reveal post surgical changes from a bunionectomy. There
> is also what appears to be an ossific body inferior to the lateral malleolus.
> However, It does not appear that it belongs to the lateral malleolus. I
> wonder if that is posterior. X-rays were taken on 6/1/04 from Canon City,
> and it is slightly under-penetrated. Never the less, we will just look at it

---

[2]"Hallux valgus" is defined as ""[d]isplacement of great toe toward other toes." Taber's Cyclopedic Medical Dictionary 718 (Clayton L. Thomas, M.D., M.P.H., ed., F. A. Davis Co. 1985).

>     again on the MRI.
>     A.      1. S/p left bunionectomy.
>             2. Left ankle cyst, suspect ganglion cyst either from the joint or from the tendon sheath.
>     P.      1. I asked him and he tells me that it is bothering him enough that he would like to have surgery if that is what's needed.
>             2. I would like to get an MRI with a marker over this mass, and **if it is truly ganglion, I would like to aspirate it first, since there is a chance that it may not come back.** If it comes back, we could excise it at that time.

(Emphasis added).

One month later, on August 13, 2004, an MRI was done of the plaintiff's left ankle. Plaintiff claims he requested the MRI results several times. Those results were finally produced to the plaintiff on September 12, 2005.[3] The MRI report states:

> 08/13/04
> HISTORY: Left ankle mass
>
> MRI OF THE LEFT ANKLE:
>
> Ankle imaging was done with standard techniques. Palpable mass was marked with a capsule.
>
> Exam confirms the presence of a fairly well-circumscribed cystic mass in the subcutaneous soft tissues immediately distal to the tip of the fibula. This measures about 15 x 5 x 10 mm in size. It contains several internal septations. It does not appear to involve the deeper structures of the ankle. There are no other similar lesions.
>
> Major tendons and ligaments around the joint are normal. Taler dome is normal. The T2-weighted images do show areas of abnormal high signal in the subchondral bone of the posterior aspect of the talus and a similar change is seen in the distal calceneus. These changes are likely reactive and probably related to an arthritic process. Subchondral bone edema related to acute trauma could cause this appearance.

---

[3] Dr. Beecroft testified that it normally takes about a month to get MRI results and that the plaintiff's results fell through the cracks even though plaintiff did request them. There are two indications on his chart that he asked for the results.

    Sinus tarsi is normal.

    IMPRESSION:
1. **Cystic mass in the subcutaneous soft tissues inferior to the distal fibula. Appearance is nonspecific. This could be a ganglion cyst or other similar mass.**
2. Changes in the subchondral bone of the talus and calcaneus, also have a nonspecific appearance. See above comments.

(Emphasis added).

    Dr. Beecroft testified that it was her medical opinion that the MRI states that the plaintiff does not have ruptured tendons and that he does have a cystic mass. She did not think that a ganglion cyst was a "serious problem," but she did state that it could be uncomfortable for someone to walk around with a cyst. As indicated above, before the MRI Dr. Go stated that "if it is truly ganglion, I would like to aspirate it first, since there is a chance that it may not come back." Dr. Beecroft testified that on September 14, 2005, she put in for a consultation for the plaintiff, who would thus be seen again by Dr. Go during the early part of October. Dr. Beecroft further stated that if a patient requests surgery and the doctors, especially a specialist, says it is not needed, then they would abide by the specialist's decision.

    Regarding plaintiff's toe, Dr. Beecroft testified that the plaintiff's toe really was not presented; she does not remember dealing with the plaintiff's toe. Dr. Beecroft was really aware of only the plaintiff's ankle. She assumes that the plaintiff previously had surgery on his toe and that it is as good as it can be. She does not think they could have done much for the plaintiff's toe, and she opined that a twisted ankle would not hurt the toe that much. In addition, she noted from Dr. Go's report that he moved the

7

toe, which was not tender. She does not think the toe was a problem.

The Tenth Circuit has stated that

> [i]n hearings upon motions for temporary or preliminary injunctive relief, the burden is upon the one requesting such relief to make a prima facie case showing a reasonable probability that he will ultimately be entitled to the relief sought. The applicant has the additional burden of showing a right to the specific injunctive relief sought because of irreparable injury that will result if the injunction is not granted. There must exist a probable right and a probable danger.

Lundgrin v. Claytor, 619 F.2d 61, 63 (10th Cir. 1980) (emphasis added) (quoting Crowther v. Seaborg, 415 F.2d 437, 439 (10th Cir. 1969)). "A TRO or [PI] is extraordinary relief." In re Qwest Communications Int'l, Inc. Sec. Litig., 241 F. Supp.2d 1119, 1122 (D. Colo. 2002). The party who is seeking the PI must show:

> 1) a substantial likelihood that the movant eventually will prevail on the merits, 2) that the movant will suffer irreparable injury unless the injunction issues; 3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; 4) that the injunction, if issued, would not be adverse to the public interest.

Id. (citing Lundgrin, 619 F.2d at 63).

"Where the opposing party has notice, the procedure and standards for issuance of a [TRO] mirror those for a [PI]." Emmis Communications Corp. v. Media Strategies, Inc., 2001 WL 111229, *2 (D. Colo. Jan. 23, 2001). "Issuance of a [TRO] is subject to the court's discretion." Id. "A party seeking a [TRO] must demonstrate clearly, with specific factual allegations, that immediate and irreparable injury will result absent a TRO." In re Qwest, 241 F. Supp.2d at 1122.

This court finds that the plaintiff has not met his burden of establishing

8

irreparable injury, let alone immediate irreparable injury. Plaintiff claims in his motion papers that "[t]he defendants have not provided plaintiff with proper medical treatment for the injuries, which would have been surgery for the ankle and toe, and have not provided him with physical therapy or with any professional specialized orthopedic treatment." Plaintiff, however, has made no showing, nor do his medical records establish, that surgery and/or physical therapy have been ordered or are required. According to Dr. Go's report prior to the MRI, if the MRI indicated a cyst, he would first try to aspirate it. As noted above, the MRI in fact indicated the presence of a cystic mass. Plaintiff is being scheduled to see Dr. Go in the near future. Even if the plaintiff is of the opinion that surgery, physical therapy, or other treatment is warranted, it is well-established that differences of opinion between a prisoner and the medical staff do not constitute deliberate indifference to a serious medical need. Woodberry v. Simmons, 2005 WL 2093053 (10th Cir. Aug. 31, 2005) (quoting Johnson v. Stephan, 6 F.3d 691, 692 (10th Cir. 1993)).

The court notes that in his motion papers plaintiff also stated that he was seeking a TRO and a PI "to remain free from retaliation and harassment." (Docket No. 58, ¶ 1). Plaintiff, however, has made no showing of any retaliation or harassment.

In sum, this court finds no basis for the issuance of a temporary restraining order or a preliminary injunction.

**WHEREFORE**, for the foregoing reasons, it is hereby

**RECOMMENDED** that the Motion for a Temporary Restraining Order and Preliminary Injunction, which was filed on August 8, 2005 (Docket No. 56), be denied.

9

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Fed. R. Civ. P. 72(b), <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated: September 22, 2005              s/Michael J. Watanabe
       Denver, Colorado                       Michael J. Watanabe
                                                    United States Magistrate Judge