IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-00215-WDM-MJW

OLOYEA D. WALLIN,

Plaintiff,

v.

MR HOYT BRILL, et al.,

Defendants.

---

## RECOMMENDATION ON
## MOTION TO DISMISS DEFENDANT DECESARO
## PURSUANT TO FED. R. CIV. P. 12(B)(6) (Docket No. 112)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**


This case is before this court pursuant to an Order of Reference to

Magistrate Judge issued by District Judge Walker D. Miller on October 21, 2004.

(Docket No. 20).

In his Amended Prisoner Complaint filed on April 1, 2004 (Docket No. 8), the pro

se incarcerated plaintiff alleges Eighth Amendment violations based upon his claim that

while he was incarcerated in Kit Carson Correctional Center ("KCCC"), various medical

staff members and employees have not provided him with appropriate and timely

treatment for an ankle injury that he sustained on January 11, 2002, and for an injury to

the big toe on his left foot in February 2002.  He also raises state tort claims of medical

malpractice, negligence, and intentional infliction of emotional distress.  Defendant

2

Anthony A. DeCesaro is identified in the Amended Complaint as "John Doe I."[1]

In his Eighth Amendment claims, plaintiff makes just the following few references to defendant DeCesaro.  First, DeCesaro was allegedly "notified of the serious need for medical care and treatment and also the enormous pain, discomfort and emotional distress of the plaintiff and [he] failed to remedy the unlawful intentional medical mistreatment, and [he was] in a position to address and assist in the situation."  (Docket No. 8 at 10, ¶ 47).  Plaintiff later claims that he notified DeCesaro "of the serious medical need and [he] failed to remedy the unlawful situation, [he was] notified by the grievances filed by the plaintiff in which [the defendant] personally signed that [he was] notified of the serious medical condition."  (Docket No. 8 at 11, ¶ 04; 12, ¶ 04).  Furthermore, plaintiff claims that DeCesaro "had manipulated and abused [his] position[] in the prison system including medical department, to wantonly inflict unnecessary pain on the plaintiff by denying the proper medical care needed for the serious injury of his torn ligaments in his left ankle" and "of his left foot big toe." (Docket No. 8 at 14).

In his state law negligence claims, plaintiff contends that DeCesaro and other defendants

> were negligent in their duties for failing to act on the delay and denial of
> the proper medical treatment for plaintiffs [sic] serious medical injury of
> the left ankle [and of the left foot big toe], despite being notified of the
> delay and denial of medical treatment, the unlawful conditions taken place
> in the delay and denial of proper medical treatment, the serious need for
> the proper medical treatment and the enormous pain, discomfort,

---

[1]On December 15, 2005 (Docket No. 97), this court granted plaintiff's motion to substitute Anthony A. DeCesaro for John Doe I (Docket No. 95).

3

emotional distress and the interference caused in the plaintiffs [sic] daily activities because of the injury, and the defendant[] failed to act or remedy the situation although being in a position and having authority to do so deliberately risking permanent serious injury to the plaintiff.

Defendants have failed to carryout [sic] their responsibilities to promote adequate medical care and treatment in this facility for the inmates including the plaintiff.  The defendants have failed to remedy unlawful medical conditions and practices in the facility which affected the medical treatment for the plaintiff, though they have been notified through grievances, complaints and civil actions filed.  The defendants have failed to adequately establish proper policy and procedure in the medical department for the inmates including the plaintiff, that would enable proper medical treatment for all inmates including the plaintiff.  The defendants have failed to adequately train, supervise and direct the medical staff at this facility which denies the ability for proper medical treatment.  The defendants have failed to provide adequate and qualified medical and prison staff in this facility that also denies the ability for proper medical treatment.  All this leads and is directly connected to the delay and denial of proper medical treatment for the plaintiffs [sic] serious medical injury of his left ankle, which constitutes negligent acts of the defendants and negligence in regards to their job duties.

(Docket No. 8 at 17, 18).

Finally, in his state law claims of intentional infliction of emotional harm, plaintiff

claims that

The defendants . . . Mr. John Doe I . . . have intentional [sic] inflicted the plaintiff with emotional distress by intentionally denying and delaying him proper medical treatment for his serious medical need of his injured left ankle [and left foot big toe], also causing enormous pain and suffering. The defendants have also inflicted this distress by failing to remedy unlawful medical conditions, and failing to act once notified that the plaintiff needed medical treatment for his left ankle.  The plaintiff has suffered this injury in January 2002 and is in enormous pain and discomfort along with mental anguish, and also risks having permanent disability in his left ankle, leg and foot.  Plaintiff also suffers from other physical problems related to the injured and untreated left ankle [and untreated left foot big toe] in his right leg and foot, left leg and foot and lower back.

4

(Docket No. 8 at 19).

In his Request for Relief, the plaintiff seeks compensatory and punitive damages and declaratory relief.  (Docket No. 8 at 21-24).  He does not mention injunctive relief in that section of his pleading, but when he identified the parties earlier in the Amended Complaint, plaintiff indicated after the names of certain defendants, including John Doe I (defendant DeCesaro), that he is suing them "for all federal claims for injunctive relief," although he never specified what injunctive relief he seeks.  (See Docket No. 8 at 4).

Before the court is the Motion to Dismiss Defendant DeCesaro Pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 112).  Defendant DeCesaro seeks dismissal of the Amended Complaint on the following grounds: (1) plaintiff's claims against DeCesaro in his official capacity are barred; (2) plaintiff's Eighth Amendment claims against DeCesaro fail due to lack of personal participation; (3) in the alternative, DeCesaro is entitled to qualified immunity with regard to the plaintiff's Eighth Amendment claims; and (4) the court should decline to exercise supplemental jurisdiction over the plaintiff's state law claims against DeCesaro.  Plaintiff filed a Response to the motion to dismiss. (Docket No. 123).  The court now being fully informed makes the following findings, conclusions, and recommendation.

For purposes of a motion to dismiss, the court must accept all factual allegations in the complaint as true and resolve all reasonable inferences in plaintiff's favor.  Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  A case should not be dismissed for

failure to state a claim unless the court determines beyond doubt that plaintiff can prove no set of facts which entitles him to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Since the plaintiff is not an attorney, his pleadings have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . .  At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant."  Id.

**Official Capacity**

In the Amended Complaint, the plaintiff states that defendant DeCesaro (John Doe I) "is being sued in his individual and official capacity.  Official capacity for all federal claims for injuctive [sic] relief and individual capacity for damage relief for all claims."  (Docket No. 8 at 4).

In his motion to dismiss, defendant DeCesaro first asserts that the plaintiff's claims against him in his official capacity are barred.  He contends that in view of the case law discussed in his motion, the plaintiff's claims for damages against him in his official capacity must be dismissed.  Furthermore, he asserts that although the section of the Complaint identifying the parties to the case states that he is being sued in his

6

official capacity for federal claims for injunctive relief, the plaintiff failed to request such relief in any portion of the two pages of the Complaint devoted to the Request for Relief, where it appears that plaintiff is actually just seeking relief in the form of compensatory damages, punitive damages, and declaratory judgment.  Consequently, defendant asserts that the plaintiff's claims against him in his official capacity should be dismissed in their entirety.

In response, plaintiff states that he "seeks declaratory relief in defendant DeCesaro official capacity, and damages in his individual capacity, and this is not barred by the Ex Parte Young doctorine [sic]. . . .  Plaintiff also seeks injunctive relief per the amended complaint."  (Docket No. 123 at 1).

It is well established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state."  Hunt v. Bennett, 17 F.3d 1263, 1267 (10th Cir. 1994).  Plaintiff, however, seeks monetary relief from the defendant in only his individual capacity.

Claims for retrospective declaratory relief are also barred by the Eleventh Amendment.  Meiners v. University of Kan., 359 F.3d 1222, 1232 (10th Cir. 2004). Therefore, the plaintiff's claim for declaratory relief against defendant DeCesaro in his official capacity should be dismissed.

Furthermore,"[t]he Eleventh Amendment does not generally bar actions for prospective injunctive relief where state officials have violated federal law."  Montez v. Romer, 32 F. Supp.2d 1235, 1241 (D. Colo. 1999).  As correctly noted by the

defendant, in the section of the plaintiff's pleading entitled "Request for Relief," plaintiff does not seek injunctive relief any of the defendants.  Furthermore, nowhere in that pleading does the plaintiff state what injunctive relief he seeks from DeCesaro or any other defendant.  However, as noted above, in the section of the Amended Complaint where the plaintiff lists the parties, plaintiff does state that DeCesaro is being sued in his "[o]fficial capacity for all federal claim for injunctive [sic] relief."  (Docket No. 8 at 4, ¶ 12).  Given the liberal treatment that must be afforded pro se litigants, this court finds that while the Amended Complaint is not a model pleading, the plaintiff has, at least for purposes of the present motion to dismiss, adequately stated a claim for injunctive relief against defendant DeCesaro in his official capacity.

**Personal Involvement**

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."  Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997).  "[A] plaintiff must show that an affirmative link exists between the [constitutional] deprivation and either the [defendant's] personal participation, his exercise of control or direction, or his failure to supervise.'"  Ledbetter v. City of Topeka, Kan., 318 F.3d 1183, 1187 (10th Cir. 2003).

In this case, defendant asserts that

> Wallin's allegations fall short of the personal participation requirements necessary in order to establish an Eighth Amendment claim.  Wallin does not allege that Defendant DeCesaro was *personally* involved in any of the incidents alleged in the Complaint other than as Step III Formal Grievance Officer for the CDOC.  Wallin's allegations are that as Step III Formal Grievance Officer, Defendant DeCesaro knew or should have known of Wallin's serious medical needs because of the grievances

he filed.  Wallin alleges that the Defendants, including DeCesaro, were put on notice of Wallin's serious medical needs by seeing or signing the grievances he filed.  In addition, Wallin alleges in his complaint that his cause of action arose in January 2002, but he did not begin filing grievances until 2003.  The record indicates that Wallin did not even file a Step III grievance until April 10, 2003, more than 14 months after the alleged cause of action arose.

There was no personal participation by Defendant DeCesaro in Wallin's medical treatment for his ankle and toe.  At most, Wallin alleges that Defendant DeCesaro was on notice of unspecified constitutional violations at the KCCC by virtue of grievances, filing a complaint or other notices.  (See Complaint, p. 18, Claim ll, para. 2) However, there mere filing of grievances within the privately owned and operated KCCC is not sufficient to establish that Defendant DeCesaro had actual knowledge of Wallin's alleged ankle injury or big toe injury, or that the medical care provided to Wallin for these conditions was not adequate. . . .  Nor would a Complaint regarding alleged other, unspecified constitutional violations from other Defendants provide Defendant DeCesaro with actual knowledge of the incidents at issue in this case. . . .

Furthermore, even assuming for the sake of argument that Wallin's filing of grievances could provide Defendant DeCesaro with actual knowledge of the incidents alleged in the Complaint, Wallin did not start filing grievances until nearly a year after the incidents alleged in the Complaint began.  Wallin alleges his injuries occurred in January and February of 2002.  The form labeled Step III Grievance attached to the Complaint is dated April 10, 2003.  The Step I and Step II grievance forms attached to the Complaint are dated January 10, 2003 , and February 4, 2003, respectively.  To the extent that Wallin alleges that his grievances provided notice or actual knowledge to Defendant DeCesaro of Wallin's problem in obtaining adequate medical treatment for his big toe and ankle, the grievances were not filed until after nearly all of the incidents alleged in the Complaint had already occurred.  Thus Wallin's grievances could not have provided Defendant DeCesaro with actual knowledge of the allegedly inadequate treatment until long after the alleged injuries occurred.  As such, Defendant DeCesaro cannot be found to have participated in or acquiesced to alleged misconduct of which he had no knowledge until after it occurred.  Consequently, Wallin has not alleged the requisite personal participation, and his Eighth Amendment claims against Defendant DeCesaro fail to state a claim upon which relief can be granted.

9

(Docket No. 112 at 6-7).

Plaintiff responds by noting that the defendant responded to plaintiff's Step 3

formal grievance in which plaintiff

> alleged numerous constitutional and state violations in regards to his
> medical treatment while at KCCC.  Defendant DeCesaro reviewed the
> step 3 formal grievance and allegedly conducted an investigation into the
> medical situation.  However, Defendant DeCesaro specifically stated that
> the plaintiff did not qualify for certain medical tratment and that 'he' felt the
> medical treatment plaintiff was receiving was adequate.
>
> Defendant DeCesaro was in a position to remedy the situation but
> instead acquiesced in the inadequate medical treatment. . . .

(Docket No. 123 at 2).

This court does not recommend dismissal based on the particular

arguments of lack of personal participation raised by the defendant in his

motion.[2]   The Tenth Circuit has recognized "two types of conduct

---

[2]The court notes, however, its Recommendation in another prisoner civil rights action, Taylor v. Ortiz, Civil Action No. 05-cv-00574 (Docket No. 60), in which this court, inter alia, recommended that the claims against defendant DeCesaro in that case be dismissed on the basis of lack of personal participation because he possesses no authority to compel the CDOC to act in any manner.  Instead, he could merely make a recommendation concerning action to be taken.  As noted in that decision, a Step 3 Grievance Officer is hired to evaluate and investigate the grievances of offenders who file Step 3 grievances, and such officer investigates the claims and determines whether they have any validity.  The officer may deny the grievance, thereby terminating the grievance process, or if the officer finds that there is merit to the claim, he may make a recommendation to the CDOC Executive Director regarding the grievance.  Only the CDOC Executive Director could compel enforcement of the Step 3 Grievance Officer's recommendations to either a CDOC facility or to a private facility that is housing Colorado inmates.  To date, this court's Recommendation has not been ruled upon by Judge Miller.

Defendant DeCesaro, however, has not made the same argument here with regard to his contention that the claims against him in this case should be dismissed for lack of personal involvement.

10

constituting deliberate indifference.  First, a medical professional may fail

to treat a serious medical condition properly. . . .  The second type of

deliberate indifference occurs when prison officials prevent an inmate

from receiving treatment or deny him access to medical personnel

capable of evaluating the need for treatment." Rutherford v. Medical

Dep't of Dep't of Corrections, 76 Fed. Appx. 893< 85 (10th Cir. 2003).

While the plaintiff's purported injuries allegedly occurred more than a year

before he filed his Step III Grievance, and while it is evident that defendant DeCesaro

was not personally involved in the actual treatment of the plaintiff's purported injuries, a

review of that Grievance, which is attached to the Amended Complaint and which was

reviewed by defendant DeCesaro, shows that the plaintiff complained that he had

requested to see a specialist; that he was told that surgery was needed for both

injuries, but nothing was being done; that his medication was not working and caused

pain in his chest; and that he was having problems walking and climbing the top bunk

ladder due to his injuries.  Therefore, plaintiff was not merely complaining of actions

taken or inactivity more than a year before, but he was also complaining of purported

on-going medical problems due to his injuries and the failure to send him to a specialist

or to have surgery which was purportedly recommended.  Plaintiff's grievances

allegedly provided DeCesaro with notice of plaintiff's allegations, yet DeCesaro

purportedly failed to act.  Based on these averments, this court does not recommend

that DeCesaro's motion be granted based upon the particular personal participation

arguments raised here.

11

**Qualified Immunity**

Defendant next asserts that he is entitled to qualified immunity in his individual

capacity.  He contends that the plaintiff

> acknowledges that he was seen by various medical personnel at the
> KCCC on multiple occasions. [Plaintiff's] allegations also state that he
> was provided with medications and treatments. [Plaintiff] disagrees with
> the diagnoses given to him and the frequency with which he was seen,
> and alleges that the treatments were not adequate.  However, as a non-
> medical prison official, Defendant DeCesaro was entitled to rely on the
> diagnoses and treatments prescribed by medical professionals, even if
> they are incorrect. . . .  This is particularly so given that Defendant
> DeCesaro is not alleged to have ever observed [plaintiff's] alleged injuries
> or treatment, or to have any personal involvement in the incidents in
> question.  Therefore, Defendant DeCesaro is entitled to qualified
> immunity in his individual capacity with regard to [plaintiff's] Eighth
> Amendment claims.

(Docket No. 112 at 10-11).

When a defendant raises a qualified immunity defense, the plaintiff "bears the

burden of showing that: (1) the defendants' actions violated a constitutional or statutory

right; and (2) the right was clearly established and reasonable persons in the

defendants' position would have known their conduct violated that right." Cruz v. City

of Laramie, Wyo., 239 F.3d 1183, 1187 (10th Cir. 2001).  "'Ordinarily, in order for the

law to be clearly established, there must be a Supreme Court or Tenth Circuit decision

on point, or the clearly established weight of authority from other courts must have

found the law to be as the plaintiff maintains.'"  Id. (footnote omitted).  "This is not to

say that an official action is protected by qualified immunity unless the very action in

question has been held unlawful . . . but is to say that in the light of pre-existing law the

unlawfulness must be apparent.'"  Hope v. Pelzer, 536 U.S. 730, 739 (2002) (citations

12

omitted).  "[O]fficials can still be on notice that their conduct violated established law even in novel factual circumstances. . . .  Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding.  The same is true of cases with 'materially similar' facts."  Id. at 741.

"Qualified immunity shields an officer from suit when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted."  Brosseau v. Haugen, 543 U.S. 194, 198 (2004).  "Because the focus is on whether the officer had fair notice that [his] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.  If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation."  Id.

In this case, the court find, at least for purposes of the instant motion, that the Amended Complaint contains sufficient factual allegations to support an Eighth Amendment claim against the defendant.

Prisoners have an Eighth Amendment right to adequate medical care.  As stated by the U. S. Supreme Court:

> elementary principles establish the government's obligation to provide
> medical care for those whom it is punishing by incarceration.  An inmate
> must rely on prison authorities to treat his medical needs; if the authorities
> fail to do so, those needs will not be met.  In the worst cases, such a
> failure may actually produce physical "torture or a lingering death," . . . the
> evils of most immediate concern to the drafters of the Amendment.  In less
> serious cases, denial of medical care may result in pain and suffering

13

which no one suggests would serve any penological purpose. . . .  The
infliction of such unnecessary suffering is inconsistent with contemporary
standards of decency . . . .

Estelle v. Gamble, 429 U.S. 97, 103 (1976) (citations omitted).  "[I]n cases where
prisoners allege that inadequate or delayed medical care violated their Eighth
Amendment rights, it has been established that '[p]rison officials violate the Eighth
Amendment [only] when they are deliberately indifferent to the serious needs of
prisoners in their custody.'"  Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001)
(citations omitted).  Such claims "thus involve both an objective and a subjective
component, such that [the court] must determine both 'whether the deprivation is
sufficiently serious' and 'whether the [government] official acted with a sufficiently
capable state of mind.'"  Id.  "[A] delay in medical care only constitutes an Eighth
Amendment violation where the plaintiff can show that the delay resulted in substantial
harm. . . . [The Tenth Circuit has] held that the substantial harm requirement may be
satisfied by lifelong handicap, permanent loss, or considerable pain."  Garrett v.
Stratman, 254 F.3d 946, 950 (10th Cir. 2001) (quotation and citation omitted).

Plaintiff complained in his grievances that he was in severe pain and discomfort
and had abnormal swelling; that he could hardly walk sometimes, he had difficulty
climbing to the top bunk, and his daily activities were affected; that he was told that
surgery was needed for both injuries, but nothing was being done; that his medication
was not working and caused pain in his chest; and that he told his doctor that the
medication was not working.  Despite these complaints, defendant DeCesaro allegedly
failed to act.  At least for purposes of the instant motion to dismiss, this court finds that

the plaintiff has adequately stated on Eighth Amendment violation.  See Sparks v.

Rittenhouse, 164 Fed.Appx. 712, **6 (10th Cir. Jan. 23, 2006) (Prisoner complaint was

found to contain sufficient factual allegations to support the objective component of the

Eighth Amendment Claim.  The prisoner alleged that he had a serious shoulder injury

for which the specialist recommended surgery and that the delay in receiving the

surgery caused him considerable pain.).  "The issue in reviewing the sufficiency of a

complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to

offer evidence to support [his] claims." Beedle v. Wilson, 422 F.3d 1059, 1063 (10th

Cir. 2005) (quotation omitted).

## Supplemental State Law Claims

Finally, DeCesaro asserts that the court should decline to exercise supplemental

jurisdiction over the plaintiff's state law tort claims against him.  He once again asserts

that the plaintiff has failed to state against him a federal claim upon which can be

granted.  However, as found above, this court does not recommend dismissal of the

Amended Complaint as against defendant DeCesaro for failure to state a federal claim,

at least based on the instant motion.

In addition, DeCesaro asserts that the plaintiff's allegations do not establish that

the plaintiff filed a timely Notice as required by the Colorado Governmental Immunity

Act, § 24-10-109, C.R.S.  In response, the plaintiff states:

> the CGIA only protects public entities and employees, in which defendant
> DeCesaro is not, but instead is a contractor with the CDOC which are not
> covered under any elements of the CGIA.  Plaintiff also states that he
> indeed filed a timely Notice under the CGIA.  The CGIA states that a
> notice must be filed within a [sic] 180 days from the discovery of the

15

violation.  Plaintiff states that in this case, the discovery of the violation
was when the doctor established that medical care was needed in
September 2002 and the Plaintiff promptly filed a Notice within a [sic] 180
days.  Further, It was also in the month of September that the Step 3
Grievance Officer informed that no treatment would be administered,
(Septmeber [sic] 24, 2002), this would be the day the 180 day clock would
start to tick, and the Plaintiff filed a timely notice pursuant to this day.
Plaintiff also states that the ongoing promises from the medical staff of
KCCC, prior to the step 3 grievance officers decision not to provide the
treatment, that they would provide the medical treatment would toll the
180 day clock under th "prommissory [sic] estoppel" clause until the
plaintiff discovered that no treatment would be administered which was on
September 24, 2002.  Plaintiff filed a timely Notice.

Further, the CGIA would not bar this Court's jurisdiction because
the CGIA only affects the prosecution of state claims, so supplemental
jurisdiction would not be affected nor improper.

(Docket No. 123 at 4).

"The notice provisions of the CGIA apply when federal courts hear

Colorado tort claims under supplemental jurisdiction."  Aspen

Orthopaedics & Sports Medicine, LLC v. Aspen Valley Hosp. Dist., 353

F.3d 832, 838 (10th Cir. 2003).  "Colorado courts strictly construe section

24-10-109(1) and consistently hold that '[c]omplying with the notice of

claim [as set forth in section 24-10-109(1)] is a jurisdictional prerequisite

to suit.'"  Id. (quoting Gallagherv. Board of Trs. For Univ. of N. Colo., 54

P.3d 386, 391 (Colo. 2002)).  "In addition to construing its terms strictly,

Colorado courts consistently hold that a plaintiff must plead compliance

with the CGIA's notice provisions in the complaint to avoid dismissal."  Id.

at 840 (citing cases).  "When a plaintiff fails to plead compliance with the

CGIA, and a court addresses the case in the context of a motion to

16

dismiss, the court must accept as a matter of 'fact' that the plaintiff failed

to comply with the notice provisions.  This lack of compliance, then, is a

jurisdictional issue." Id.

While the plaintiff in the instant case claims in his response to defendant's

motion that he filed the requisite notice, he failed to plead compliance with the CGIA

notice provisions in his Amended Complaint.  In addition, although plaintiff also claims

in his response that defendant DeCesaro is not a public employee, in his Amended

Complaint, plaintiff instead states the following regarding this defendant:

> Mr. John Doe I, Step III Formal Grievance Office, Colorado Dept. of
> Corrections, 2862 So. Circle Drive Suite #400, Colorado Springs
> Colorado 80906
> At the time the claims alleged in this complaint arose, defendant was
> acting under color of state law.
> He is being sued in his individual and official capacity.  Official capacity
> for all federal claims for injuctive [sic] relief and individual capacity for
> damage relief for all claims.

(Docket No. 8 at 4, ¶ 12).  Therefore, due to the plaintiff's failure to plead compliance

with the CGIA's notice provisions, it is recommended that his state law claims against

defendant DeCesaro be dismissed without prejudice.

**WHEREFORE**, for the foregoing reasons, it is hereby

**RECOMMENDED** that the Motion to Dismiss Defendant DeCesaro Pursuant to

Fed. R. Civ. P. 12(b)(6) (Docket No. 112) be **granted in part and denied in part**.

More specifically, it is recommended that the plaintiff's claim for declaratory relief

against defendant DeCesaro in his official capacity should be dismissed with prejudice

and that the plaintiff's state law claims against defendant DeCesaro be dismissed

without prejudice.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Fed. R. Civ. P. 72(b), <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.  <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated: June 22, 2006              s/ Michael J. Watanabe
     Denver, Colorado              Michael J. Watanabe
                           United States Magistrate Judge