IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-00215-WDM-MJW

OLOYEA D. WALLIN,

Plaintiff,

v.

MR HOYT BRILL,
MS. WEDERSKI,
MR. RAND,
MS. HILL,
MS. FRANK,
MS. BAIR,
MR. DECESSARO, and
MR. JOE ORTIZ,

Defendants.

---

**RECOMMENDATIONS ON**
**(1) MOTION FOR SUMMARY JUDGMENT BY DEFENDANT ORTIZ (Docket No. 152) and AMENDED MOTION FOR SUMMARY JUDGMENT BY DEFENDANT ORTIZ (Docket No. 287);**
**(2) KCCC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Docket No. 161) (Joined by Defendants Wederski [Docket No. 193], Hill [Docket No. 203], Decesaro and Ortiz [Docket No. 263]);**
**(3) DEFENDANT VAUGHN'S MOTION FOR SUMMARY JUDGMENT (Docket No. 196);**
**(4) DEFENDANT VAUGHN'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT (Docket No. 216);**
**(5) DEFENDANT HILL'S MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT WITH AUTHORITIES (Docket No. 217);**
**(6) DEFENDANT WEDERSKI'S MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT WITH AUTHORITIES (Docket No. 219); and**
**(7) DEFENDANT DECESARO'S MOTION FOR SUMMARY JUDGMENT (Docket No. 258);**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this court pursuant to an Order of Reference to Magistrate Judge issued by District Judge Walker D. Miller on October 21, 2004. (Docket No. 20).

In his Amended Prisoner Complaint filed on April 1, 2004 (Docket No. 8), the pro se incarcerated plaintiff alleges Eighth Amendment violations based upon his claim that while he was incarcerated in Kit Carson Correctional Center ("KCCC"), various medical staff members and employees did not provide him with appropriate and timely treatment for an ankle injury that he sustained on January 11, 2002, and for an injury to the big toe on his left foot shortly thereafter. He also raises state tort claims of medical malpractice, negligence, and intentional infliction of emotional distress. Named as defendants are Mr. Hoyt Brill (the Warden of KCCC), Ms. Wederski (the KCCC Medical Administrator), Mr. Rand (who is actually John Rand Neuenschwander, M.D., see Docket Nos. 161 and 191, who was a doctor at KCCC), Ms. Hill (the head nurse at KCCC), Ms. Frank, Mr. Bair, Mr. Decesarro, and Mr. Ortiz (the Executive Director of the Colorado Department of Corrections).

More specifically, the plaintiff alleges the following. On January 11, 2002, he informed the medical department that he suffered a severe ankle injury and was in extreme pain and discomfort and had difficulty walking. Twelve days later, defendant Hill finally analyzed plaintiff's injury, did not properly diagnose it as "the bulking of torn ligaments in the ankle," gave plaintiff ice, and denied a referral to the facility doctor.

(Docket No. 8 at 6). The next day (January 24, 2002), plaintiff notified the medical department of an injury to the big toe of his left foot, which caused extreme pain and discomfort, and that he was still having extreme pain in his left ankle. The response he received was that an appointment would be made. Thereafter, plaintiff repeatedly informed the medical department of his severe pain. On February 10, 2002, he went to the department, and he was given ice and was not permitted to see a doctor. Plaintiff subsequently repeatedly informed the department of continued pain and difficulty walking, but they failed to respond. He was seen on September 2, 2002, by defendant Hill. Plaintiff explained the pain, difficulty walking and climbing to his bunk, his emotional distress, and his belief that the pain and swelling medicine was not working and causing heartburn. He requested to see a doctor for the proper diagnosis of his leg and foot problems. Defendant Hill essentially told plaintiff that nothing could be done or would be done, that all she could do was prescribe him an ankle brace, and that she would not refer him to a doctor for treatment. Subsequently, plaintiff repeatedly requested to see a doctor, without success. Plaintiff finally saw Dr. Rand (John Rand Neuenschwander, M.D.), who allegedly

> diagnosed [plaintiff] as suffering from torn ligaments in his left ankle and that he would recommend that plaintiff be moved to the bottom bunk because of the severity of the injury and that there is nothing he could do now because surgery should have been done earlier upon notification of the injury and that he would prescribe a swelling medication to see if swelling goes down and that he would try to recommend some type of physical therapy. He then explained to plaintiff that his left foot big toe had been broken and rehealed incorrectly and that surgery and medical care should have been done earlier as well and that he could do nothing now. He also explained that pressure would be applied to the right leg and foot as well as to the lower left leg because of the extent of the

injuries along with muscle and other deteriation [sic].

(Docket No. 8 at 8, ¶ 35). On December 23, 2002, plaintiff again notified the

department of his pain and discomfort in his ankle and big toe and requested to see a specialist. (Docket No. 8 at 8, ¶ 36). Defendants responded on December 27, 2002, that plaintiff needed x-rays and that they were awaiting approval for a specialist. Plaintiff then repeatedly submitted sick call requests, to no avail.

Plaintiff raises fourteen claims for relief, namely, six Eighth Amendment deliberate indifference claims, four state law medical malpractice claims, two state law negligence claims, and two state law intentional inflection of emotional distress claims. He seeks compensatory and punitive damages and declaratory relief.

Now before the court are the following motions: (1) Motion for Summary Judgment by Defendant Ortiz (Docket No. 152) and Amended Motion for Summary Judgment by Defendant Ortiz (Docket No. 287); (2) KCCC Defendants' [defendants Hoyt Brill, Rand Neuenschwander, and Bair] Motion for Summary Judgment (Docket No. 161) (joined by Defendants Wederski [Docket No. 193], Hill [Docket No. 203], Decesaro and Ortiz [Docket No. 263]);(3) Defendant Vaughn's Motion for Summary Judgment (Docket No. 196); (4) Defendant Vaughn's Motion to Dismiss or for Summary Judgment (Docket No. 216); (5) Defendant Hill's Motion to Dismiss or Alternatively for Summary Judgment with Authorities (Docket No. 217); (6) Defendant Wederski's Motion to Dismiss or Alternatively for Summary Judgment with Authorities (Docket No. 219); and (7) Defendant Decesaro's Motion for Summary Judgment (Docket No. 258).

Plaintiff filed a joint response to the KCCC defendants' motion and defendant Ortiz' first motion for summary judgment. (Docket No. 174). The KCCC defendants filed a Reply in support of their motion. (Docket No. 191). Plaintiff filed a joint response to the motions to dismiss or for summary judgment which were filed by defendants Vaughn and Hill (Docket Nos. 216 and 217), but that joint response was stricken by this court (Docket No. 238) because this court had expressly denied plaintiff's motion to combine his responses and specifically directed plaintiff to file separate responses. (See Docket Nos. 223 and 228). Plaintiff never filed separate responses but filed an objection to this court's Minute Order striking his joint response. (Docket No. 249). Plaintiff filed a response to defendant Decesaro's motion (Docket No. 298), which was stricken by Judge Miller. (Docket No. 301). Plaintiff then filed an amended response to the motion. (Docket No. 307).

The court has considered the motions listed above, the responses thereto, and the one reply. In addition, the court has considered the entire case file and applicable Federal Rules of Civil Procedure and case law. The court now being fully informed makes the following findings, conclusions, and recommendation that judgment be entered for the defendants on the plaintiff's Eighth Amendment claims and that the court decline to exercise supplemental jurisdiction over the plaintiff's state law claims.

Rule 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A

party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial." Robertson v. Board of County Comm'rs of the County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)). "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. . . . These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves.'" Southway v. Central Bank of Nigeria, 149 F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003). However, "[i]n order to survive summary judgment, the content of the evidence that the nonmoving party points to must be *admissible*. . . . The nonmoving party does not have to produce evidence in a form that would be admissible at trial, but '"the content or substance of the evidence must be admissible."' . . . Hearsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment because 'a third party's description of a witness' supposed testimony is "not suitable grist for the summary judgment mill."'" Adams v. American Guarantee & Liability Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000). See Wright-Simmons v. City of Oklahoma City, 155 F.3d 1264, 1268 (10th Cir. 1998).

"Summary judgment is also appropriate when the court concludes that no

reasonable juror could find for the non-moving party based on the evidence presented in the motion and response." Southway, 149 F. Supp.2d at 1273. "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . . Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." Id.; Robertson, 78 F. Supp.2d at 1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)). "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." Southway, 149 F. Supp.2d at 1274. "Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party." Id. at 1273.

Since the plaintiff is not an attorney, his pleadings have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

Defendants raise several bases for dismissal of the plaintiff's claims. All of the defendants assert that the plaintiff has failed to state an Eighth Amendment claim of deliberate indifference. This court agrees with that assertion. Last year, in Self v. Crum, 439 F.3d 1227 (10th Cir.), cert. denied, 127 S.Ct. 131 (2006), the Tenth Circuit Court of Appeals provided a thorough summary of the standards for claims of deliberate indifference to a prisoner's medical needs. That entire summary is incorporated herein. This court has reviewed the evidence and affidavits submitted by the parties in conjunction with the pending motions and finds that this is simply a case where the prisoner plaintiff merely disagrees with the diagnosis and prescribed course of treatment by the medical providers at KCCC, which, like his claims of negligence and malpractice, does not state a constitutional violation.

The undisputed medical evidence supports defendants' assertion that the plaintiff was provided medical treatment for both his left ankle and his left big toe while at KCCC, which included x-rays, medication, ice packs, ankle braces, and new footwear. For example, defendants' undisputed facts, which are supported by the submitted medical records, show the following. Plaintiff was seen on January 8, 2002, for his ankle injury at which time he was given an ice pack and medication (see Docket No. 161, Ex. A-3 - indicating an ice pack for three days and 200 mg of ibuprofen for three days). On January 14, 2002, he was seen again, and his ankle was observed to be slightly swollen. An x-ray was ordered, and he was given additional ice pack and medication and an ankle wrap (see Docket No. 161, Ex. A-4 - indicating the x-ray taken, ice pack for 14 days, and 600 mg. of ibuprofen daily for 30 days). The x-ray

results were negative, indicating no fracture or dislocation. (Docket No. 161, Ex. A-5). Plaintiff subsequently received medical attention for his ankle on February 10, 11, and 14, 2002. On February 11, it was ordered that he was to receive wider boots to help alleviate any pain to the ankle, and an ankle brace was dispensed. (See Docket No. 161, Ex. A-4 and A-6). He received medical attention again on March 9, 2002, at which time his complaints included his left ankle and foot. (Docket No. 161, Ex. A-7). Plaintiff again received medical attention on May 13, 2002, and was prescribed additional pain medication. (Docket No. 161, A-9). The following month, on June 11, 13, and 18, 2002, he received additional medical attention. (Docket No. 161, Ex. A-9, A-10). The assessment on the latter date was "old L ankle sprain." (Docket No. 161, Ex. A-10). Plaintiff was put onto Dr. Rand Neuenschwander's list. (Docket No. 161, Ex. A-10). In August, plaintiff was seen again, and his ankle swelling was described as mild. (Docket No. 161, Ex. A-11). The following month, on September 2, 2002, he was again seen for his ankle injury, among other complaints, and he was provided a heavy-duty ankle brace. (Docket No. 161 at A-11). On October 9, 2002, he was seen for his back and ankle, at which time he was instructed to cease playing sport or lifting weights for three days. (Docket No. 161, Ex. A-12). Plaintiff's medications were renewed on October 16, 2002 (Docket No. 161, Ex. A-12), and on October 21, 2002, he received medical attention. (Docket No. 161, Ex. A-13). On October 25, 2002, a second x-ray of his ankle was ordered, which indicated no fractures, subluxations, or other abnormalities. The impression was "NORMAL LEFT ANKLE." (Docket No. 161, Ex. A-13, A-15). The following month, on November 27, 2002, he was seen again for his

ankle, toe, and other complaints. (Docket No. 161, Ex. A-14). Plaintiff was also seen by the medical staff on February 12 and 21, 2003. (Docket No. 161, Ex. A-16). The next month, on March 8, 2003, he was seen by medical staff concerning an injury to his eyelid that he received while playing basketball. (Docket No. 161, Ex. A-17). His medications were renewed on March 17, 2003. (Docket No. 161, Ex. A-18). The following month, he missed a doctor's appointment. (Docket No. 161, Ex. A-18).

In addition to the above medical reports, plaintiff has also not produced any evidence that disputes the statements made in the affidavit of defendant Dr. Rand Neuenschwander, who diagnosed plaintiff's ankle injury as a fairly minor sprain, and stated that another doctor's report showed that plaintiff's toe condition was an old fracture or a bunion, for which Dr. Rand Neuenschwander opines surgery was cosmetic, not medically necessary, and elective. The doctor significantly states in his affidavit:

> [] I originally examined Plaintiff on July 10, 2002, approximately six months after his left ankle injury. **I diagnosed Plaintiff with an ankle sprain. . . . I found the sprain to be fairly minor, and found the ligaments of the ankle to be stable.** I even underlined by [sic] finding in the July 10, 200 ambulatory report. Plaintiff did not mention any problem with his left big toe during my examination of him on July 10, 2002. I personally examined Plaintiff again on November 27, 2002. **During this examination I found the left ankle joint to be stable. I did note that the ankle showed evidence of a minor sprain** though I could not determine whether this sprain related to the original injury on January 8, 2002, or a new injury. I did know that despite my advice to Plaintiff, he continued to play basketball which stress may have contributed to the existence of the minor sprain. **Despite my notation of a minor sprain, I did not determine additional medical treatment was necessary or warranted under the circumstances.**
>
> [] I noted during my review of Plaintiff's medical records that **Plaintiff had**

**received appropriate treatment for his ankle injury while at KCCC. Plaintiff's ankle was x-rayed on two separate occasions, he was provided ice, ace bandages, an ankle brace, special footware [sic], and advised to stay off the ankle as much as possible. I do not believe Plaintiff needed additional treatment or examination.**

[] During my examination of Plaintiff on November 27, 2002, Plaintiff advised me that he had suffered an old fracture to his left big toe. **Other medical records I have reviewed are inconsistent with Plaintiff's self-described history of an old fracture and indicate Plaintiff had a previous surgery to remove a bunion from the big left toe. Dr. Go's report [Plaintiff's Exhibit 4] refers to the toe problem as a bunion recurrent years after a bunionectomy. In either event, I did not and would not recommend treatment for an old fracture or bunion.** The injury occurred well before Plaintiff arrived at the correctional facility and **any remedy would be considered elective as the concerns about removal are cosmetic and not medically necessary.**

[] I was scheduled to examine Plaintiff again on April 2, 2003 but Plaintiff failed to show for his appointment.

[] I also reviewed the MRI report of August 13, 2004, attached as Exhibit 4 to Plaintiff's Response to the KCCC Defendants' Motion for Summary Judgment. The MRI report confirms my evaluation and care provided to Plaintiff. First, **the MRI confirms that the ligaments in Plaintiff's left ankle have, as expected with all but severe sprains, healed such that no abnormalities now exist on the MRI. As I stated previously, a minor sprain, as Plaintiff's injury was diagnosed, which was stable on repeated medical exams is expected to heal stably [sic] with time and rest without surgery or casting.**

[] **Plaintiff's MRI did reveal a ganglion cyst the size of a small jelly bean. A ganglion cyst is normally found on a tendon, not a ligament, where ankle sprains occur. It is rarely the result of a trauma, develops over years of time, and is not expected with ankle sprains nor identified early in injury nor prevented by timely surgery. Ganglions are minimally tender with direct pressure only and Dr. Go records no evidence of tenderness. Dr. Go recommends treatment by aspiration rather than surgery.**

[] In conclusion, I believe the care provided by [sic] Plaintiff meets the applicable standards of care. **The original sprain was documented as**

> **stable and was expected to heal without cast or surgery. The MRI confirmed that it did. The cyst now presenting cannot be logically attributed to the original injury, let alone predicted by or ascribed to any care or evaluation provided to Plaintiff. It is expected to disappear with simple aspiration. The toe injury has been reported as recurrence of a bunion after bunionectomy many years ago and has nothing to do with the care provided by me or anyone at the KCCC.**

(Docket No. 191-2) (emphasis added).

While plaintiff complains that he was not readily seen by a doctor, that he was not referred to a specialist, and that tests, such as an MRI, were not performed, at most plaintiff alleges a dispute with the course of treatment he was provided for his sprained ankle and bunion. See Self v. Crum, 439 F.3d at 1232 ("[T]he subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his medical judgment. Matters that traditionally fall within the scope of medical judgment are such decisions as whether to consult a specialist or undertake additional medical testing. . . . The Eighth Amendment's Prohibition on cruel and unusual punishment is not violated when a doctor simply resolves 'the question whether additional diagnostic techniques or forms of treatment is indicated.'"). As shown by the medical records submitted by the defendants, the plaintiff was seen by KCCC medical personnel numerous times from the date of his ankle injury in January 2002 to April 2, 2003, which was just before his transfer out of that facility. In fact, during that time period, he was seen twice by a doctor and missed his third doctor's appointment. Furthermore, as shown above, the doctor who did examine him opined that the ankle injury was merely a minor sprain that was appropriately treated with ice,

pain medication, and an ankle brace and was expected to heal over time. Although plaintiff claims that doctor had advised him that he had suffered severe torn ligaments in his left ankle that should have been treated properly with surgery when the injury occurred in January 2002 and that the big toe had been broken and now healed with a deformity because it was not properly treated in 2002, such allegations are not supported by the ambulatory record cited by the plaintiff, the other medical notes of record, or the affidavit of the doctor. The MRI of record even confirmed that the "[m]ajor tendons and ligaments around the joint are normal." (Docket No. 174-5 at 1). There is no indication that the plaintiff's condition required unusual medical skill or ability or that the KCCC medical personnel were incapable of treating plaintiff.

Plaintiff also complains about a delay in the medical care he received, but such a claim is not of constitutional magnitude since he has not shown that any purported delay resulted in substantial harm. See Kikumura v. Osagie, 461 F.3d 1269, 1292 (10th Cir. 2006). The court notes that plaintiff has attached medical records to his response which he claims show that there was such substantial harm (Pl.'s Ex. 4), i.e., the cystic mass that was eventually removed and the bunion. As defendants correctly assert, however, there is no medical evidence that reaches the conclusion that the cystic mass was caused by a delay in treatment or that it was even related to the original ankle injury. In fact, as shown above, Dr. Rand Neuenschwander opined in his affidavit that a ganglion cyst "is rarely the result of a trauma, develops over years of time, and is not expected with ankle sprains nor identified early in injury nor prevented by timely surgery. Ganglions are minimally tender with direct pressure only and Dr. Go records

no evidence of tenderness. . . . The cyst now presenting cannot be logically attributed to the original injury, let alone predicted by or ascribed to any care or evaluation provided to Plaintiff." (Docket No. 191-2). In addition, with respect to plaintiff's toe, the report submitted by plaintiff indicates that the surgery was elective, and as indicated above, Dr. Rand Neuenschwander opined that the removal of a bunion is considered cosmetic and not medically necessary.

In sum, this court finds that the evidence of record fails to raise a genuine issue of material fact as to whether the defendants acted with deliberate indifference to the plaintiff's medical condition. Based upon this finding, it is unnecessary to address the defendants' additional arguments concerning plaintiff's Eighth Amendment claims.

Defendants assert that the court should decline to exercise supplemental jurisdiction over the plaintiff's state law claims. This court agrees. "Where a district court has dismissed all claims over which it has original jurisdiction, 28 U.S.C. § 1367(c)(3) expressly authorizes the court to decline to exercise supplemental jurisdiction over the remaining state-law claims." Sauer v. McGraw-Hill Cos., 2001 WL 1250099, *18 (D. Colo. June 12, 2001). "Whether to exercise supplemental jurisdiction under such circumstances lies within the discretion of the court." Id. (citation omitted). Generally, "the balance of factors to be considered will point towards declining to exercise jurisdiction over state-law claims when the federal claims have been eliminated prior to trial." Id. (citation omitted). Furthermore, "[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." Id. (quotations omitted). In this case, there are no compelling reasons to

exercise supplemental jurisdiction. Furthermore, there is an issue raised in the motions concerning plaintiff's malpractice claims with respect to the necessity of a certificate of review in this case (see § 13-20-602, C.R.S.) which could be better addressed by the state court. Based upon the above, it is recommended that the plaintiff's state law claims be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c). See Wallin v. Hill, 2005 WL 1924663 (D. Colo. Aug. 10, 2005) (court declined to exercise supplemental jurisdiction in another action brought by this plaintiff), aff'd sub nom. Wallin v. Dycus, 2006 WL 2590493 (10th Cir. Sept. 11, 2006).

**WHEREFORE**, for the foregoing reasons, it is hereby

**RECOMMENDED** that (1) Motion for Summary Judgment by Defendant Ortiz (Docket No. 152) and Amended Motion for Summary Judgment by Defendant Ortiz (Docket No. 287); (2) KCCC Defendants' [defendants Hoyt Brill, Rand Neuenschwander, and Bair] Motion for Summary Judgment (Docket No. 161) (joined by Defendants Wederski [Docket No. 193], Hill [Docket No. 203], Decesaro and Ortiz [Docket No. 263]);(3) Defendant Vaughn's Motion for Summary Judgment (Docket No. 196); (4) Defendant Vaughn's Motion to Dismiss or for Summary Judgment (Docket No. 216); (5) Defendant Hill's Motion to Dismiss or Alternatively for Summary Judgment with Authorities (Docket No. 217); (6) Defendant Wederski's Motion to Dismiss or Alternatively for Summary Judgment with Authorities (Docket No. 219); and (7) Defendant Decesaro's Motion for Summary Judgment (Docket No. 258, be **GRANTED**, that judgment be entered for the defendants on the plaintiff's Eighth Amendment claims (Claims 1 through 6), that the court decline to exercise supplemental jurisdiction over

the plaintiff's state law claims (Claims 7 through 14), and that the plaintiff's state law claims (Claims 7 through 14) thus be dismissed without prejudice.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Fed. R. Civ. P. 72(b), Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated: January 22, 2007
Denver, Colorado

s/ Michael J. Watanabe
Michael J. Watanabe
United States Magistrate Judge